J-S30005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: S.S., A MINOR,<br><br>Appellee<br><br><br>APPEAL OF: K.S., MOTHER | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA<br><br><br>No. 188 MDA 2017 |

Appeal from the Decree December 30, 2016
In the Court of Common Pleas of York County
Orphans' Court at No(s): 2015-0031A

| | |
|---|---|
| IN RE: L.J.K., A MINOR,<br><br>Appellee<br><br><br>APPEAL OF: K.S., MOTHER | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA<br><br><br>No. 189 MDA 2017 |

Appeal from the Decree December 30, 2016
In the Court of Common Pleas of York County
Orphans' Court at No(s): 2015-0030A

| | |
|---|---|
| IN RE: S.S., A MINOR,<br><br>Appellee<br><br><br>APPEAL OF: K.S., MOTHER | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA<br><br><br>No. 207 MDA 2017 |

Appeal from the Order Entered January 3, 2016
In the Court of Common Pleas of York County
Juvenile Division at No(s): CP-67-DP-0000065-2013

| | |
|---|---|
| IN THE INTEREST OF: L.J.K., A MINOR, <br><br> Appellee <br><br><br> APPEAL OF: K.S., MOTHER | IN THE SUPERIOR COURT OF PENNSYLVANIA <br><br><br><br><br> No. 208 MDA 2017 |

Appeal from the Order Entered January 3, 2016
In the Court of Common Pleas of York County
Juvenile Division at No(s): CP-67-DP-0000066-2013

BEFORE:  SHOGAN, RANSOM, and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JUNE 19, 2017**

K.S. ("Mother") appeals from the December 30, 2016 decrees involuntarily terminating her parental rights to her minor children, S.S., a daughter born in April of 2010, and L.J.K., a son born in June of 2011 (collectively, "the Children").[1]  In addition, Mother appeals from the orders entered January 3, 2017, which changed the Children's permanency goals from reunification to adoption.  We affirm.

On March 22, 2013, the York County Office of Children, Youth and Families ("CYF") filed applications for emergency protective custody of the

_____

[1]  The trial court also terminated the parental rights of T.A., the father of S.S., and C.K., the father of L.J.K.  Neither father has appealed the termination of his parental rights.

- 2 -

Children. In its applications, CYF averred that it was previously involved with Mother due to her lack of appropriate housing and concerns regarding her parenting skills. Application for Emergency Protective Custody (S.S.), 3/22/13, at 3. CYF averred that the Children should be removed from Mother's care for a variety of reasons, including Mother's ongoing housing issues, domestic violence concerns, Mother's failure to address the Children's medical needs appropriately, the dirty and unkempt appearance of the Children, and scratches to the faces of both Children, including some on S.S.'s face that were so deep they could cause permanent scarring.[2] *Id.* at 4-6. The Children were removed from Mother's care that same day and adjudicated dependent by orders entered April 9, 2013.

For the next two years, CYF provided Mother with a variety of services, including three in-home teams, in an effort to reunify her with the Children. N.T., 7/9/15, at 57, 60-62. However, Mother failed to remedy the conditions which led to the Children's removal. On March 24, 2015, CYF filed petitions to terminate involuntarily Mother's parental rights to the Children, as well as petitions to change the Children's permanency goals from reunification to adoption. The trial court conducted a termination and goal-change hearing on July 2, 2015, July 9, 2015, and August 25, 2015. On December 18,

---

[2] In addition to the allegations in the applications for emergency protective custody, CYF had concerns regarding Mother's mental health and substance abuse. N.T., 7/9/15, at 15.

2015, the court entered orders changing the Children's permanency goals from reunification to placement with a non-relative legal custodian and with a concurrent goal of reunification. On January 19, 2016, the court entered orders denying the termination petitions. CYF and the Children's guardian *ad litem*[3] appealed.

A prior panel of this Court vacated the trial court's orders. **In the Interest of S.I.M.S.**, 103 MDA 2016, 2016 WL 5920416 (Pa. Super. filed September 7, 2016) (unpublished memorandum). This Court explained that the trial court failed to conduct a proper analysis pursuant to the statutory authority governing termination and goal-change petitions and remanded

---

[3] We are aware of the Pennsylvania Supreme Court's recent decision in **In Re Adoption of L.B.M.**, 156 A.3d 1159 (Pa. 2017), wherein the court held that 23 Pa.C.S. § 2313(a) requires the trial court to appoint counsel for a child in a termination of parental rights case; because the failure to do so is structural, it can never be a harmless error.

Notably, in part part II-B of the lead opinion, Justice Wecht held that a trial court is required to appoint counsel to represent a child's legal interests even when the child's guardian *ad litem*, who is appointed to represent the child's best interests, is an attorney. Justice Wecht would hold that the interests are distinct and require separate representation. However, four members of the Court disagreed with such a strict application of section 2313(a). Rather, they opined in various concurring and dissenting opinions that separate representation would be required only if the child's best interests and legal interests conflicted.

In the present case, Mother did not raise before the trial court any concerns that would have created a need for independent legal counsel for the Children, nor did she make any claims that the GAL did not properly represent the Children's legal and best interests. In fact, we observe that the GAL, who is also an attorney, well represented the Children on both fronts and that their legal and best interests were not in conflict.

the case for the court to conduct a new analysis. Having complied with our directive, the trial court entered decrees on December 30, 2016, involuntarily terminating Mother's parental rights to the Children. The trial court also entered orders changing the Children's permanency goals to adoption with a concurrent goal of placement with a non-relative legal custodian on January 3, 2017. Mother timely filed notices of appeal on January 27, 2017, along with concise statements of errors complained of on appeal.

Mother now raises the following issues for our consideration:

I. Whether the trial court erred as a matter of law by granting the request of [CYF] to terminate [Appellant] Mother's parental rights when the agency failed to present clear and convincing evidence under 23 PA. C.S[.]A. Section 2511 (a) (1) (2) (5) (8).

II. Whether the [trial] court erred when it found that [CYF] presented clear and convincing evidence that termination of [Appellant] Mother's parental rights best served the emotional needs and welfare of the [C]hild[ren].

III. Whether the trial court erred by granting [CYF] the requested goal change from reunification to adoption without clear and convincing evidence that this change of goal would best serve the interests of the Children.

Mother's Brief at 4 (full capitalization omitted; reordered for ease of disposition).

We first address Mother's claim that the trial court erred by terminating her parental rights.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and

credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101–2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Mother's parental rights pursuant to Section 2511(a)(8), and (b), which provides as follows:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(8) and (b).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) The child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

***In re Adoption of M.E.P.***, 825 A.2d 1266, 1275–1276 (Pa. Super. 2003).

"Notably, termination under Section 2511(a)(8) does *not* require an evaluation of [a parent's] willingness or ability to remedy the conditions that

led to placement of her children." ***In re Adoption of R.J.S.***, 901 A.2d 502, 511 (Pa. Super. 2006) (citations omitted; emphasis in original).

In its December 30, 2016 opinion, the trial court found that the Children have been removed from Mother's care for over twelve months and that Mother failed to remedy the conditions which led to the Children's removal. Trial Court Opinion, 12/30/16, at 10. The trial court explained that the Children were removed from Mother's based on "concerns regarding unstable housing and safety of the [C]hildren due to Mother's lack of parenting skills, her substance abuse issues, and her mental health issues." ***Id.*** The court observed that, while Mother did obtain stable housing, she made only minimal progress with respect to parenting, substance abuse, and mental health. ***Id.*** at 10-13. The court further found that terminating Mother's parental rights would serve the needs and welfare of the Children. ***Id.*** at 13-16. The court reasoned that the Children have a bond with Mother, but that this bond is outweighed by "the need of the [C]hildren to be properly cared for, by Mother's lack of parenting skills, and her inability to obtain those skills despite extensive training by CYF." ***Id.*** at 14. The court opined that the Children have a bond with their foster family. ***Id.*** at 14-15.

In response, Mother argues that she remedied the conditions which led to the Children's removal and that terminating her parental rights would not serve the Children's needs and welfare. Mother's Brief at 24-25. Mother contends that she has maintained stable housing and attended her visits with the Children consistently. ***Id.*** at 23-26. Mother further claims that the

Children share a strong bond with her and that severing that bond would be detrimental to the Children. *Id.* at 27.

Our review of the record supports the trial court's findings. With respect to the first requirement of Section 2511(a)(8), the Children have been removed from Mother's care for over twelve months. The Children were first removed from Mother's care on March 22, 2013. N.T., 7/9/15, at 11. By the time of the termination and goal-change hearing in July and August of 2015, the Children had been removed from Mother's care for over two years. Mother admitted that she is not ready to care for the Children. *Id.* at 70–71.

With respect to the second requirement of Section 2511(a)(8), the record confirms that Mother failed to remedy the conditions which led to the Children's removal. During the termination and goal-change hearing, CYF presented the testimony of family support caseworker, Kristina Scott. Ms. Scott testified, as discussed above, that the Children were removed from Mother's care due to Mother's lack of stable housing, mental health concerns, substance abuse concerns, and inadequate parenting skills. N.T., 7/9/15, at 15.

With regard to housing, Ms. Scott testified that Mother has resided in the same apartment for about two years. N.T., 7/9/15, at 18. However, Ms. Scott expressed concern that Mother recently faced eviction proceedings and that Mother's ability to maintain that apartment remains "uncertain." *Id.* at 18-19, 71.

As for Mother's mental health, Ms. Scott explained that Mother has several diagnoses, including post-traumatic stress disorder, adjustment disorder with mixed disturbances of emotions, and conduct-depressive disorder, not otherwise specified. N.T., 7/9/15, at 16. Mother has been prescribed medication to help her address these diagnoses, but she refuses to take it. *Id.* at 16, 63. Mother currently receives therapy from a Catholic Charities in-home psychiatrist. *Id.* at 16, 61-62. Previously, Mother received additional outpatient therapy through Catholic Charities, but this therapy closed unsuccessfully due to Mother's lack of attendance. *Id.* at 16, 62.

Concerning substance abuse, Ms. Scott testified that Mother "had a substance abuse problem with marijuana" when she first became involved with CYF in 2010. N.T., 7/9/15, at 19. Mother sometimes tested positive for marijuana or refused to be tested.[4] *Id.* Mother completed a drug and alcohol evaluation, but she was discharged unsuccessfully from the recommended outpatient treatment. *Id.* at 31, 62.

Regarding parenting skills, Ms. Scott testified that Mother receives only supervised visits with the Children. N.T., 7/9/15, at 47. Ms. Scott explained

---

[4] The record indicates that Mother tested positive for THC (tetrahydrocannabinol) on December 5, 2014, and December 9, 2014, and that Mother admitted to using marijuana as recently as January 13, 2015. N.T., 7/2/15, at 216–217, Guardian's Exhibit 3 (N.T. Permanency Review Hearing, 1/13/15, at 8, 17-18) ("I did smoke today. I smoked before. I did. That's the only time I smoked.")).

that Mother was offered unsupervised visits with Children from October 2014 until November 2014, but that Mother's unsupervised visits were ended due to her "very questionable" behaviors while caring for the Children. *Id.* at 26, 47. These behaviors included driving the Children with only a learner's permit and allowing the Children to take turns "steering the car while it's in motion" through a parking lot while sitting on the lap of Mother's sister. *Id.* at 26–27, 47–48. Ms. Scott reported that S.S. described one unsupervised visit during which "there was a man in Mommy's room and he wasn't allowed out during the visit, but there was a man in there, and he was hiding in the room during the visit." *Id.* at 27. Ms. Scott expressed concern that Mother exhibits poor decision-making when left unsupervised with the Children, which puts the Children at risk. *Id.* at 73.

Finally, with respect to the third requirement of Section 2511(a)(8), the record confirms that the Children's needs and welfare will be served by terminating Mother's parental rights. Although Ms. Scott testified that the Children share a strong bond with Mother, she also testified that the Children have a strong bond with their pre-adoptive foster parents, who they refer to as "mom and dad." N.T., 7/9/15, at 54–55; N.T., 8/25/15, at 61.

We reiterate that it was within the trial court's discretion to conclude the Children's need for permanence and stability outweighs any harm that they may suffer as a result of the termination of Mother's parental rights. This is especially true where, as here, the Children have been removed from Mother's care for several years and Mother remains unable to care for them.

As this Court has stated, "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." **R.J.S.**, 901 A.2d at 513.

We next consider whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b). This Court has discussed the analysis pursuant to Section 2511(b) as follows:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and

citations omitted).[5]

As explained above, our review of the record confirms that terminating

Mother's parental rights will best serve the needs and welfare of the

Children. The Children have spent years in foster care, and Mother remains

unable and unprepared to care for them. N.T., 7/9/15, at 11, 15–16, 18–

19, 47, 62–63, 70–71, 73. While the Children are bonded with Mother, the

record supports the trial court's conclusion that this bond is outweighed by

the Children's need for permanence and stability. N.T., 7/2/15, at 54, 151,

159–160; N.T., 7/9/15, at 54–55, 80–82; N.T., 8/25/15, at 23–24, 107–

123.

We next consider Mother's challenge to the orders changing the

Children's permanency goals to adoption. We do so mindful of the following:

> [T]he standard of review in dependency cases requires an
> appellate court to accept the findings of fact and credibility
> determinations of the trial court if they are supported by the
> record, but does not require the appellate court to accept the

---

[5] We observe that Sections 2511(a)(8) and (b) both require a court considering a termination petition to assess the needs and welfare of the child. However, the needs-and-welfare analysis required by Section 2511(a)(8) is distinct from the needs-and-welfare analysis required by Section 2511(b) and must be addressed separately. *See In re C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*) ("[W]hile both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the 'needs and welfare of the child,' . . . they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).").

lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

Pursuant to § 6351(f) of the Juvenile Act, [42 Pa.C.S.,] when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088–1089 (Pa. Super. 2011) (citations and quotation marks omitted).

Instantly, the trial court addressed the factors set forth at Section 6351(f) its December 30, 2016 opinion. Trial Court Opinion, 12/30/16, at 2–8. The trial court found that the Children have been in foster care for over two years, that Mother has made "mostly minimal progress" during the Children's time in foster care, that she is not currently capable of caring for the Children, and that she likely will not be capable of caring for the Children in the near future. *Id.* at 2–3, 5. The trial court further found that the Children are being properly cared for in their foster home and that changing the Children's permanency goal to adoption would provide the Children "with

a sense of stability and permanency in their lives, which they will not have if the goal were to remain reunification." *Id.* at 8.

Mother argues that she completed the majority of the goals set forth in her Family Service Plan. Mother's Brief at 18–19. Mother claims once again that she maintained stable housing and attended her visits with the Children consistently. *Id.* at 19. Mother further contends that she is participating in therapy consistently and that she "has made fundamental changes in regards to her anger management and coping skills[.]" *Id.* at 20. Mother is not entitled to relief.

As explained above, Mother has failed to remedy the conditions which led to the removal of the Children from her care despite more than two years of opportunities. The Children need a permanent and stable home, which Mother cannot provide. Thus, the record supports the trial court's conclusion that it is in the Children's best interests to change their permanency goals from reunification to adoption.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by involuntarily terminating Mother's parental rights to the Children and by changing the Children's permanency goals to adoption. Accordingly, we affirm the December 30, 2016 decrees and the January 3, 2017 orders.

Decrees affirmed.  Orders affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/19/2017